COOLEY LLP
ALI M. M. MOJDEHI (123846)
JANET D. GERTZ (231172)
ALLISON M. REGO (272840)
4401 Eastgate Mall
San Diego, CA 92121
Telephone:  (858) 550-6000
Facsimile:  (858) 550-6420

Attorneys for
Liquidating Trustee, Richard M Kipperman

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>NORTH PLAZA, LLC,<br>a California Limited Liability Company<br><br>Debtor, | Case No. 04-00769 CL11<br><br>CHAPTER 11<br><br>**APPLICATION OF LIQUIDATING TRUSTEE FOR ENTRY OF A FINAL DECREE AND ORDER CLOSING CHAPTER 11 CASE AND OTHER RELATED RELIEF**<br><br>[No Hearing Unless Requested]<br><br>Place: Department 5, Room 318<br>Judge: Hon. Christopher B. Latham |

TO THE HONORABLE CHRISTOPHER LATHAM, UNITED STATES BANKRUPTCY JUDGE; THE UNITED STATES TRUSTEE; AND ALL INTERESTED PARTIES AND THEIR COUNSEL OF RECORD:

Richard M Kipperman (the "Liquidating Trustee"), the Liquidating Trustee of the North Plaza, LLC estate, appointed pursuant to the Chapter 11 Plan of debtor North Plaza, LLC dated May 15, 2012 [Docket No. 1072] and Order dated July 31, 2012, Approving and Confirming Combined Plan of Liquidation and Disclosure Statement. [Docket No. 1132], with an Effective Date of September 14, 2012 (the "Plan Effective Date"), makes this application to the Court for

an entry of a final decree and order closing the above captioned Chapter 11 Case of the Debtor, In re North Plaza, LLC (04-00769-CL-11) (the "Bankruptcy Case"), pursuant to Section 350(a) of the Bankruptcy Code[1] and Fed. R. Bankr. Proc. 3022, along with other related relief.

The majority of payments under the Plan have been made, and the Liquidating Trustee has determined that it is appropriate to request that the Court would enter a final decree and close the Bankruptcy Case at this time. The distributions the Liquidating Trustee has made under the Plan are significant. Almost all assets have now been distributed, and the Liquidating Trustee has determined that there is no longer a need to keep the Bankruptcy Case open.

This Application is made and based upon the Notice of Intended Action, the Memorandum of Points and Authorities incorporated herein, the supporting Declaration of Richard M Kipperman filed concurrently herewith, all other pleadings filed in support of the Application, any other relevant pleadings or matters of record in the Bankruptcy Case, and any other evidence property presented to the Court. A proposed order is attached hereto as **Exhibit A**.

## I. STATEMENT OF FACTS

### A. The Bankruptcy Case

Prior to its bankruptcy, the Debtor was a California limited liability company that owned, as its primary asset, certain real property consisting of approximately 40 acres of land located in Temecula, California (the "North Plaza Property"). William P. Johnson ("Johnson") was the Debtor's manager and held a 55% interest in the Debtor through Shining City, Inc. ("Shining City"), a Wyoming corporation owned by Johnson and his wife Patricia Johnson (together, the "Johnsons").

Following the Petition Date, the Debtor (directly or indirectly controlled by Johnson) sought to settle its claims with, among others, Dynamic Finance Corporation ("Dynamic") and Angela C. Sabella ("Sabella"), who lent money on a secured basis to support Johnson's various real estate ventures. This proposed settlement was ultimately denied by the Bankruptcy Court,

---

[1] References to the "Bankruptcy Code" are to Title 11 of the United States Code, 11 U.S.C. §101 *et seq*.

and the Court ordered the appointment of a Chapter 11 Trustee in order to investigate the complex web of transactions among Johnson, Dynamic, Sabella and their respective affiliated entities, employees and creditors. Richard M Kipperman was appointed as the Chapter 11 Trustee ("Chapter 11 Trustee") on June 6, 2006 [Docket No. 484].

During the course of the Trustee's investigation, Dynamic initiated an adversary proceeding (No. 08-90035-PB) (the "Adversary Proceeding") against the Trustee seeking, among other things, a declaration that its Claim No. 16 was allowed, valid secured claim, and in first priority position. The Trustee filed an answer and counterclaims against Dynamic for avoidance of fraudulent transfer, avoidance of liens, equitable subordination, recharacterization, usury, and objection to Dynamic's Claims against the Estate. [Adv. Proc. Docket No. 17]. Following the adjudication of Dynamic's Motion to Dismiss the Trustee's counterclaims, on July 1, 2008, the Chapter 11 Trustee, pursuant to leave of the Court, filed the First Amended Counterclaims [Adv. Proc. Docket No. 28]. Subsequently, by stipulation and Order, the Chapter 11 Trustee filed the Second Amended Counterclaims as well as a cross-complaint [Adv. Proc. Docket No. 46] (the "Cross-Complaint"), asserting 28 claims, including numerous additional theories of liability against Dynamic and Sabella, as well as against various additional third party defendants.

Between March and August 2010, however, the parties engaged in a series of mediation sessions that culminated in an agreement in principle. That agreement in principle was memorialized in the settlement agreement among the Chapter 11 Trustee, Dynamic and Sabella (the "Dynamic-Sabella Settlement"), which was ultimately approved by the Bankruptcy Court on April 1, 2011 (the "Settlement Approval Order"). [Docket No. 955]. The Dynamic-Sabella Settlement resulted in the dismissal of the claims brought by Dynamic against the Estate in the Adversary Proceeding, as well as the compromise of Dynamic's and Sabella's respective claims against the Estate, resulting in significant assets being recovered for general unsecured creditors, freeing up cash of approximately $5.4 million from Dynamic and Sabella's asserted liens, and paving the way for the Chapter 11 Trustee's proposal and ultimate confirmation of a Chapter 11 Plan under which the recoveries under the Dynamic-Sabella Settlement would be distributed.

### B.     The Chapter 11 Plan

Following the Court's approval of the Dynamic-Sabella Settlement, and after further consultation with the creditors of the Estate, the Chapter 11 Trustee proposed a Chapter 11 Plan dated May 15, 2012 ("Plan"), which was confirmed by the Court under the Court's Findings of Fact, Conclusions of Law, and Order Pursuant to 11 U.S.C. §§ 1125 AND 1129 and Federal Rules of Bankruptcy Procedure 3017 AND 3020 Approving and Confirming Combined Plan of Liquidation and Disclosure Statement Dated May 15, 2012 on July 31, 2012 (the "Confirmation Order"). [Docket No. 1131]. The essential terms of the confirmed Plan[2] are as follows:

- • The unpaid amount of Allowed Administrative Expense Claims and Priority Tax Claims will be paid in full in Cash on the later of (i) the Effective Date or as soon thereafter as reasonably possible, or (ii) the date such Claims become Allowed or otherwise become payable under the Plan.  Administrative Expense Claims and Priority Tax Claims are not classified for purposes of voting or distribution under the Plan.

- • Claim No. 16, the only Claim in Class 1, is deemed an Allowed first priority Secured Claim in the amount of $7,378,092.00.  Claim No. 16, which is held by the Estate as a result of the Dynamic-Sabella Settlement, with an undisputed first priority lien on all of the Estate's assets (which assets are to be transferred to the Liquidating Trust), including the Cash currently on hand as of September 30, 2011 of approximately $5.4 million.  The Plan is implemented by the Chapter 11 Trustee's election to forego any Distribution it is entitled to receive on account of Claim No. 16 and to contribute all such Distributions to a Liquidating Trust corpus for Pro Rata Distribution to Class 2 Holders of Allowed Unsecured Claims.  Class 1 (Claim No. 16) is impaired and is eligible to vote under the Plan.

- • Class 2 is comprised of Allowed Unsecured Claims, which is essentially every Allowed Claim that is not Claim No. 16, which are subordinate to Claim No. 16, including any Claim asserted as a junior Secured Claim.  This Class also contains certain Unsecured Assigned Claims, which were Estate property by virtue of the Dynamic-Sabella Settlement. The Unsecured Assigned Claims (i) have a combined face value of approximately $22 million; and (ii) are

---

[2] Capitalized terms used herein but not defined are as defined in the Plan.

deemed Allowed under the Plan. As with Claim No. 16, under the Plan the Chapter 11 Trustee elects to forego any Distribution he may be entitled to on account of the Allowed Unsecured Assigned Claims or, at the Chapter 11 Trustee's sole election, shall otherwise subordinate those Claims to all other Unsecured Claims with respect to receipt of Distributions. Included in those Distributions are any post-Effective Date recoveries obtained from Causes of Action prosecuted by the Liquidating Trustee, to which Holders of Allowed Unsecured Claims are exclusively entitled, since no Creditor holds a security interest in those recoveries. Class 2 was impaired and was eligible to vote under the Plan.

- Class 3 is comprised of all Equity Interests, which are cancelled under the Plan. Since Class 3 Interest Holders will not receive any Distribution under the Plan, they were deemed to reject the Plan.

- A liquidating trust was formed to hold and distribute any remaining assets, and Mr. Kipperman was elected as the Liquidating Trustee.

- On the Effective Date, the Chapter 11 Trustee transferred the Cash on hand from the bank account(s) of the Debtor's Estate to a bank account established by the Liquidating Trust. In addition, all Remaining Assets and rights to payment of every kind, including post-Effective Date recoveries arising from the Liquidating Trustee's prosecution of Causes of Action, were to be transferred to the Liquidating Trust.

- The Plan required the Liquidating Trustee to oversee the liquidation of the Remaining Assets, prosecute Causes of Action as he deemed appropriate, resolve disputed Claims, and make Pro Rata Distributions to Holders of Allowed Unsecured Claims in accordance with the Plan.

- The Adversary Proceeding remained open and pending under the Plan, subject to the terms of the Dynamic-Sabella Settlement. The Liquidating Trustee was substituted for the Chapter 11 Trustee as the real party in interest with respect to the open litigation, *e.g.*, the Cross-Complaint.

## II. EVENTS FOLLOWING CONFIRMATION

### A. Plan Effectiveness

The Plan Effective Date occurred on September 14, 2012. The Initial Distribution Date also occurred on September 14, 2012. [Docket No. 1136]. An Order finally approving and allowing Estate professionals' applications for reimbursement of fees and expenses was entered on December 10, 2012. [Docket No. 1172].

### B. Summary of Litigation Activities

#### 1. The Adversary Proceeding and Settlement Thereof

The Liquidating Trustee entered into negotiations with the parties to the Adversary Proceeding, that is, William P. Johnson, Patricia Johnson, Shining City, Inc.; Vail USA, LLC; Vail Lake Village & Resort, LLC; Vail Lake Rancho California, LLC; AUH20, LLC; and Water Assurance of California, LLC (collectively, the "Settling Defendants"), to settle the Adversary Proceeding, culminating in a Settlement Agreement and Mutual Release entered into effective December 6, 2012, subject to Court approval ("Adversary Proceeding Settlement"). Under the Adversary Proceeding Settlement, the Settling Defendants were obligated to pay the Liquidating Trustee 25 percent of their "Net Gain" (as defined in the Settlement Agreement), up to a maximum amount of $1,500,000.00. After the Liquidating Trustee moved the Court for approval of the Adversary Proceeding Settlement, Sabella objected to the proposed settlement, asserting that Vail Lake Rancho California, LLC's consent to the settlement was without effect, in view of a preliminary injunction relating to Vail Lake Rancho California, LLC, which had been entered in litigation Sabella had initiated against Vail Lake Rancho California, LLC and William P. Johnson in Riverside Superior Court. As such, without reaching the merits of Sabella's contention, the Court ordered that Vail Lake Rancho California, LLC not be included as a party to the approved settlement, unless and until the preliminary injunction was lifted by the Riverside Superior Court. The Court approved the settlement in all other respects. The Court entered an Order approving the Settlement Agreement, in material part, on May 7, 2013. [Docket No. 1256.] Pursuant to the Order approving the Adversary Proceeding Settlement, the Liquidating Trustee dismissed the Adversary Proceeding, with prejudice, as to all the Settling Defendants, except Vail Lake Rancho

California, LLC. On June 6, 2013, the Clerk of the Court closed the Adversary Proceeding, dismissing it as to all defendants, with prejudice.

Prior to such dismissal, an involuntary petition had been filed against Vail Lake Rancho California, LLC, on December 26, 2012. An order for relief was entered in that case on June 10, 2013. Settling Defendants, Vail USA, LLC; Vail Lake Village & Resort, LLC; and other affiliated entities filed voluntary chapter 11 cases on June 5, 2013. The Liquidating Trustee filed a proof of claim in each of the bankruptcy cases of Vail Lake Rancho California, LLC; Vail USA, LLC; and Vail Lake Village & Resort, LLC. The bankruptcy cases of Vail Lake Rancho California, LLC; Vail USA, LLC; and Vail Lake Village & Resort, LLC, were substantively consolidated, along with other affiliated debtors, and all assets were transferred to the Vail Lake Liquidating Trust under debtors' plan, which became effective on April 1, 2015. The Vail Lake Liquidating Trust has made distributions to general unsecured creditors, and the Liquidating Trustee has recovered $270,000 to date on account of the claims filed by the Liquidating Trustee against Vail Lake Rancho California, LLC; Vail USA, LLC; and Vail Lake Village & Resort, LLC. It is expected that any further distributions from the consolidated cases of Vail Lake Rancho California, LLC; Vail USA, LLC; and Vail Lake Village & Resort, LLC, would be *de minimis*, if any.

There are still obligations outstanding to the Estate under the Adversary Proceeding Settlement, which provides for payment of up to a maximum amount of $1,500,000.00 total consideration. Settling Defendants, William P. Johnson, Patricia Johnson, Shining City, Inc.; AUH20, LLC; and Water Assurance of California, LLC have not filed bankruptcy cases, and there is no stay against enforcement of the Settlement Agreement against them. Because these remaining Settling Defendants are not believed to have significant assets, the Liquidating Trustee does not intend to take actions to enforce the Settlement Agreement at this time, although the situation will be monitored. As such, additional recoveries under the Settlement Agreement are not likely.

**2.     North Plaza v. Bree, Adversary Proceeding 06-90217-CL and 06-90217-CL**

The Debtor had filed two adversary proceedings against Dorene Bree, prior to the Chapter

11 Trustee's appointment. The Liquidating Trustee determined that the cases had no merit or were otherwise mooted under the Dynamic-Sabella Settlement. Each of the cases against Ms. Bree were dismissed without prejudice on March 27, 2013 and were closed.

### 3. Appeal of Trial Court Order in Dynamic v. First American Title Company

Under the Dynamic-Sabella Settlement, all claims and/or rights connected to the claims that were settled were assumed by the Chapter 11 Trustee. One of the claims (and associated rights) that was assumed was a claim by Dynamic against First American Title Company for errors and omissions in connection with a negligent recording of the lien against the North Plaza real property. Dynamic disputed the Chapter 11 Trustee's right title and interest to this claim, however, and continued to prosecute the claim in Riverside Superior Court, and lost at trial. Prior to the Plan Effective Date, the Chapter 11 Trustee sought the Court's aid in obtaining enforcement of the Dynamic-Sabella Settlement, in order to obtain control of the claim. [Docket No. 1099]. On August 21, 2012, the Court issued an Order, which, among other things, found the disputed claim to the property of the Estate and authorizing the Chapter 11 Trustee to substitute in as the real party in interest in the litigation pending in Riverside Superior Court, and awarding the Chapter 11 Trustee fees and costs as a prevailing party in the dispute. [Docket No. 1129].

Unfortunately, the disputed title to the action produced detrimental delay. The action proceeded to trial before the Trustee was allowed to step in as the real party in interest and control the litigation. The Riverside Superior Court found against Dynamic at trial. Pursuant to the powers granted to the Liquidating Trustee under the Plan, the Liquidating Trustee retained Cooley, LLP, as appellate counsel ("Appellate Counsel") in order to prosecute an appeal of the Riverside Superior Court's Judgment to the California Court of Appeals, Fourth District Court of Appeal. Unfortunately, the Fourth District Court of Appeal affirmed the Judgment of the Riverside Superior Court, from which decision no appeal was taken, and it is now final.

The Liquidating Trustee has reached an agreement with Appellate Counsel under which Appellate Counsel has agreed to accept 50 percent of their fees incurred in prosecuting the appeal, along with payment of all actual costs incurred, in full satisfaction of Appellate Counsel's fees and costs relating to the Liquidating Trustee's litigation and appeal of the Riverside Superior

Court's Judgment. The compromised amount of fees and costs of Appellate Counsel are estimated to be in the amount of $86,409.46, which the Liquidating Trustee proposes to pay from cash on hand, as soon as practicable following entry of an order of the Court closing the Bankruptcy Case. In addition, Cooley, LLP is owed approximately $25,000 for Post-Confirmation fees and costs for services rendered as general bankruptcy counsel, which I am proposing to pay from remaining cash on hand, pursuant to the provisions of the Confirmation Order, Section "U" at Paragraph 24, as soon as practicable following entry of an order of the Court approving the Application and closing the Bankruptcy Case.

### 4. Litigation Recoveries.

In addition to the recoveries to the Estate resulting from the Dynamic-Sabella Settlement, as discussed *supra*, to date the Liquidating Trustee has recovered a total of $353,852 for the benefit of the beneficiaries Liquidating Trust, as a result of the litigation that has been pursued by the Liquidating Trustee. Although further distributions are possible, it is anticipated that they would not be significant.

### C. Plan Payments

**1.** The Liquidating Trustee has made distributions in the amount of $4,721,878.21 to general unsecured creditors, $612,088.66 on claims by Estate professionals for fees and costs, and $26,425.00 on other administrative claims. Total disbursements (including administrative claims, taxes, and U.S. Trustee Fees), are in the amount of $5,366,817.87 as of July 20, 2017. Payments of U.S. Trustee Fees are current. A final distribution will be made within 20 days following the entry of a final order of the Court closing the case, from the remaining cash on hand, after payment of the outstanding costs of administration of the Liquidating Trust.

## III. DISCUSSION

### A. The Bankruptcy Case Should be Closed

Decree "O" of the Confirmation Order provides that:

> Upon Substantial Consummation of the Plan and entry of a Final Order resolving all timely Administrative Expense Claims and any other matters over which the Bankruptcy Court shall retain continuing jurisdiction pursuant to the Confirmation Order, the Trustee shall file a motion with the Bankruptcy Court to obtain a

final decree to close the Bankruptcy Case.

Section 350 of the Bankruptcy Code requires the Court to close a bankruptcy case after the estate has been fully administered and the trustee is discharged. 11 U.S.C. §350(a). Rule 3022 of the Federal Rules of Bankruptcy Procedure governs the procedure for closing a bankruptcy case. The 1991 Advisory Committee Notes to Rule 3022 list six factors to be considered in determining whether an estate has been fully administered and a final decree should be entered, closing the case. Here, all six of the Rule 3022 factors are in favor of closing the Chapter 11 Case.

### 1. Whether the Order Confirming the Plan Has Become Final.

No appeal was filed following entry of the Confirmation Order. Therefore, the Confirmation Order is final. *See* Fed. R. Bankr. P. Rule 8002

### 2. Whether Deposits Required by the Plan Have Been Distributed

The Liquidating Trustee was not required by the Plan to make any deposits and has not made any deposits.

### 3. Whether the Property Proposed by the Plan to Be Transferred Has Been Transferred

As set forth supra, all assets of the Debtor's estate were transferred to the Liquidating Trust. Also as set forth *supra*, all assets of the Liquidating Trust have been liquidated and the Liquidating Trustee has disbursed property, formerly of the Debtor's estate, in accordance with the terms of the Plan.

### 4. Whether the Debtor under the Plan Has Assumed the Business or the Management of the Property Dealt with by the Plan

This factor is not relevant here, because the Plan is a plan of liquidation, and all assets of the Debtor's estate were transferred to the Liquidating Trust, for distribution, which has been accomplished.

### 5. Whether Payments under the Plan Have Commenced

The pendency of future distributions under the plan does not preclude entry of a final decree. "A case may be fully administered even through all payments to creditors have not been completed. . . . Rather, if payments under the plan have commenced and there are no contested

matters or adversary proceedings pending or likely to be filed, the case may be closed. *Wells Fargo Bank, N.A. v. Nocolaysen (In re Nicolaysen)*, 228 B.R. 252, 261 (Bankr. E.D. Cal. 1998) (*citing In re Ground Sys. Inc.*, 213 B.R. 1016, 1019 (B.A.P. 9th Cir. 1997)).

As set forth *supra*, here the Liquidating Trustee has made all the distributions required under the Plan, totaling more than $5,366,817.87. Almost all assets in the Liquidating Trust have been distributed, but for cash currently on hand in the amount of $276,394.24, which has been reserved to pay the final administrative expenses of the Liquidating Trust, including, without limitation, the fees and costs of the Trustee and the trust's professionals, including, without limitation, Appellate Counsel.

### 6.   Whether All Motions, Contested Matters, and Adversary Proceedings Have Been Finally Resolved

There are no pending motions, contested matters or adversary proceedings. None are contemplated to be filed. All claim objections have been resolved. *See* Kipperman Declaration ¶12-13.

### B.   Destruction of Debtor's Records

The Liquidating Trustee seeks authority to destroy all of the Debtor's records in the Liquidating Trustee's possession or control, except for: (i) income tax records, which shall be kept for the applicable time period under Internal Revenue Service and Franchise Tax Board regulations; and (ii) records relating to litigation and the Bankruptcy Case that are in counsel's possession, which shall be kept in accordance with Cooley's document retention policies. As to all other records, including personnel files, there is no reason to maintain these records following closure of the Bankruptcy Case. The Liquidating Trustee therefore requests authorization to destroy them.

### C.   Payment of Fees and Costs of Trustee and other Estate Professionals

The Trustee has distributed $638,513.66 post confirmation. Kipperman Decl. ¶11. Therefore, at the fee allowed under 11 U.S.C. §330, the Trustee is entitled to receive compensation of fees in the amount of $35,175.69 plus estimated costs of $227.59, for an estimated total of $35,403.28. These fees and costs will be paid from remaining cash on hand, as

soon as practicable following entry of an order of the Court closing the Bankruptcy Case.

As noted above, there are approximately $25,000 of fees and costs payable to counsel for general services rendered to the trust, including, without limitation, for general case management, and relating to the preparation of this Application. All actual reasonable fees and costs incurred will be paid from remaining cash on hand, in accordance with the provisions of the Confirmation Order, Section "U" at Paragraph 24, as soon as practicable following entry of an order of the Court closing the Bankruptcy Case.

As discussed, *supra*, in addition, the Liquidating Trustee proposes to pay the compromised amount of fees and costs of Appellate Counsel in the amount of $86,409.46, from remaining cash on hand, as soon as practicable following entry of an order of the Court closing the Bankruptcy Case. The Liquidating Trustee believes such payment is reasonable and appropriate in the exercise of his business judgment, and hereby requests authorization of this payment. Kipperman Declaration ¶¶14, 15.

Additionally, the Liquidating Trustee has requested the Liquidating Trust's tax accountants, Squar Milner LLP, to prepare the Liquidating Trust's final state and federal tax returns and a final post confirmation report. The fees for these services are anticipated to be approximately $12,000. All actual reasonable fees and costs incurred by Squar Milner LLP for such services will be paid from remaining cash on hand, in accordance with the provisions of the Confirmation Order, Section "U" at Paragraph 24,as soon as practicable following entry of an order of the Court closing the Bankruptcy Case and as these services are completed. Kipperman Declaration ¶16.

After payment of administrative fees and expenses, the Trustee expects to make a distribution of approximately $100,000 to creditors in accordance with the Plan.

**IV.   CONCLUSION**

For the reasons and authorities stated above, the Liquidating Trustee respectfully requests that the Court direct entry of a final decree and order closing the Chapter 11 Case, granting authority to the Liquidating Trustee to destroy the Debtor's records in the manner stated herein, and granting such other and further relief as the Court deems necessary and appropriate.

Cooley LLP
Attorneys At Law
San Diego

143120596 v6

12

Respectfully submitted,

Dated: September 27, 2017

                    COOLEY LLP

By:   /s/ Ali M.M. Mojdehi
       Ali M.M. Mojdehi
       Janet D. Gertz
       Allison M. Rego

       Counsel for Richard M Kipperman, Liquidating Trustee of the North Plaza, LLC estate,

# **EXHIBIT A**

CSD 1001A [11/15/04]
Name, Address, Telephone No. & I.D. No.
Ali M.M. Mojdehi (123846)
Cooley, LLP
4401 Eastgate Mall
San Diego, CA 92121
(858) 550-6000 (tel.)
((858) 550-6240 (fax)
Attorneys for Richard M Kipperman, Liquidating Trustee

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re.
North Plaza, LLC, a California limited liability company

Debtor.

BANKRUPTCY NO. 04-00769 CL11

Date of Hearing:
Time of Hearing:
Name of Judge: Hon. Christopher B. Latham

# ORDER ON APPLICATION OF LIQUIDATING TRUSTEE FOR ENTRY OF A FINAL DECREE AND CLOSING CHAPTER 11 CASE AND OTHER RELATED RELIEF

**IT IS ORDERED THAT** the relief sought as set forth on the continuation pages attached and numbered two (2) through 2 with exhibits, if any, for a total of 1 pages, is granted. Motion/Application Docket Entry No. _____

//
//
//
//
//
//

DATED:

Judge, United States Bankruptcy Court
Hon. Christopher B. Latham

Signature by the attorney constitutes a certification under Fed. R. of Bankr. P. 9011 that the relief in the order is the relief granted by the court.

Submitted by:

Cooley, LLP
(Firm name)

By: Ali M.M. Mojdehi
    Attorney for ☒ Movant  ☐ Respondent
    Richard M Kipperman, Liquidating Trustee

CSD 1001A

American LegalNet, Inc.
www.USCourtForms.com

ORDER ON LIQUIDATING TRUSTEE'S APPLICATION FOR ENTRY OF FINAL DECREE, ETC.

DEBTOR: NORTH PLAZA, LLC                                    CASE NO: 04-00769 CL11

WHEREAS, Richard M Kipperman (the "Liquidating Trustee") of the North Plaza, LLC's post confirmation estate has made his Application to the Court for entry of a final decree and order closing the chapter 11 case, along with other related relief (the "Application"), along with the Declaration of Liquidating Trustee, Richard M Kipperman, in support, which was filed pursuant to the provisions and requirements for Notice of Intended Action and Opportunity for Hearing under L.Bankr.R. 2002-2(10), and pursuant to 11 U.S.C. Section 350(a) and Fed.R.Bankr.Proc. 3022.

WHEREAS, adquate notice has been given of the Notice and Application pursuant to the requirements of Fed.R.Bankr.Proc. 2002(a);

WHEREAS, [no party in interest has objected to or responded to the Notice, nor has any party in interest requested a hearing] [a hearing was held on _____]; and

WHEREAS, the Court has reviewed the Application and Declaration of the Liquidating Trustee in support and finding good cause exists for granting the relief sought therein.

THEREFORE, the Court now orders as follows:

1) The Application is granted, and a final decree of the Chapter 11 Case of the Debtor, North Plaza, LLC will issue, and the case shall be closed upon entry of this Order.

2) The Liquidating Trustee may make the distributions to estate professionals that are described in the Application and is granted authority to take all actions reasonable and appropriate to that end.

3) The Liquidating Trustee is given authority to enter into the settlement with Appellate Counsel, as set forth in Paragraph II.B.3 of the Application and make the payments related thereto.

4) The Liquidating Trustee is given authority to destroy all of the Debtor's records in the Liquidating Trustee's possession or control, as set forth in Paragraph III.B of the Application, excluding income tax records, which shall be kept for the applicable time period under the Internal Revenue Service and Franchise Tax Board regulations; and (ii) records relating to litigation and the Bankruptcy Case that are in counsel's posession, which shall be kept in accordance with counsel's document retention policies

5) The Liquidating Trustee shall pay any outstanding United States Trustee's fees to the United States Trustee within five (5) days of entry of this Order].